ARKADY BUKH
Admitted Pro Hac Vice
Bukh Law, PA
1123 Avenue Z
Brooklyn, NY 11235
Phone: (718) 376-4766
Fax: (718) 376-3033
Email: honorable@usa.com

Alex Gruzman
7703 Santa Monica Blvd, Ste 1
West Hollywood, CA 90046
(818) 590-6688
info@alexgruzman.com

Attorneys for Defendant
Elena Shifrin

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>Elena Shifrin,<br>Defendant. | Case No.: CR 21-259-AB<br><br>**SENTENCING MEMORANDUM** |

Defendant Elena Shifrin ("Defendant"), by and through her counsel of record, Arkady Bukh, hereby respectfully submits this memorandum in support of a non-guideline sentence of time-served.

## I. HISTORY AND CHARACTERISTICS OF DEFENDANT

Mrs. Elena Shifrin (nee: Gohman) was born on February 2, 1962, in Cherven, Belarus, to the union of Leonid Gohman and Mira Gohman (nee: Heifez). Both of Mrs. Shifrin's

parents are deceased. Mrs. Shifrin's brother, Vladimir Gohman, a codefendant in the instant matter, resides in Belarus. From an early age, she experienced anti-Semitic discrimination in Belarus because her family was Jewish. To escape it, in 1991, Mrs. Shifrin and her family immigrated to Israel. However, it was not an easy transition as they did not speak Hebrew. Mrs. Shifrin's parents worked manual labor jobs, and Mrs. Shifrin worked for a small diamond-cutting business to help support the family.

On June 18, 1985, Mrs. Shifrin married Mr. Roman Shifrin, who has been supporting Mrs. Shifrin from the very first day of her arrest in this matter. He states in his letter of support that he has been "happily married to Elena since June of 1985." Exhibit 2 at 18. He writes about their relationship, "I feel incredibly lucky to have such a loving and caring partner in my life and a wonderful mother to our daughter." Id. at 19.

Mrs. Shifrin and her husband have one child: Mishel Shifrin, age 29, who lives with her parents. In 2001, Mrs. Shifrin, her husband, and their daughter moved from Israel to the Chicago, Illinois. On February 6, 2007, Mrs. Shifrin became a naturalized United States citizen in Chicago.

Mrs. Shifrin suffers from hypothyroidism, hypertension, and acid reflux. In 1996, Mrs. Shifrin had her gallbladder surgically removed and in approximately 2003, Mrs. Shifrin had her thyroid surgically removed. Mrs. Shifrin is taking medication to manage her health conditions. Mr. Roman Shifrin also suffers from a heart condition called "chronic AFib."

## II. OFFENSE CONDUCT

Defendant was arrested in connection with this offense on June 17, 2021, in the Northern District of Illinois. She was released on the same day on a $100,000 secured bond

without Pretrial Services Agency supervision and ordered to be transferred to the Central District of California.

On February 18, 2022, Defendant Elena Shifrin pled guilty to Count 1 of Indictment, charging her with Conspiracy to Violate the Arms Export Control Act 22 U.S.C. § 2778(b)(2), (c); 22 C.F.R. §§ 121.1, 123.1, 127.1(a)(4). Dkt. No. 72.

In summary, Defendant and her co-conspirators participated in the sales of certain defense articles that were covered by the United States Munitions List without first obtaining from the United States Department of State a valid license or other approval for such export. Specifically, said Defendants sold thermal imaging scopes which are designed to be mounted either on firearms or headgear and use heat-detection technology to enhance the visibility of heat-emitting objects in the dark. PSR at ¶25. Essentially, Mrs. Shirin, based on her co-conspirators' instructions, shipped said items overseas. Id. at ¶¶31-32.

## III. GUIDELINES CALCULATION

The Supreme Court has made it clear that a district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which is the "starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 457 (2007).

In Defendant's Presentence Report, the Probation determined his total offense level of 23, a criminal history category of I, and the guideline imprisonment range of 46 to 57 months. However, upon considering certain mitigating factors, the Probation recommended the following:

> in mitigation, Shifrin is a first-time, non-violent offender. Additionally, it appears that Shifrin became involved in the conspiracy due to her familial relationship with the codefendant, who is her younger brother.

> Further, since her arrest for the present matter and release on bond, Shifrin has maintained a law-abiding lifestyle.
>
> Therefore, in light of these factors, the Probation Officer is recommending a custodial term of 36 months, which roughly is the equivalent of a two-level downward variance from the advisory guideline range.

Probation Letter dated February 2, 2023 at 5-6.

## IV. MRS. SHIFRIN'S SENTENCE

In light of the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005) and its progeny such as Rita v. United States, 551 U.S. 338 (2007), Gall v. United States, 552 U.S. 38 (2007), and Kimbrough v. United States, 552 U.S. 85 (2007), the basic framework for sentencing now settled. First, the Court must determine the now-advisory Sentencing Guidelines range. Gall v. United States, 552 U.S. at 46. Second, the Court must undertake its overarching statutory charge to impose a sentence that, considering "the nature and circumstances of the offense and the history and characteristics of the defendant," is "sufficient, but not greater than necessary":

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the Defendant and
>
> (D) to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §§ 3553 (a), 3553 (a)(1),(2).

Third, the Court should also consider "the kinds of sentences available . . . any pertinent Sentencing Commission policy statement the need to avoid unwarranted sentence disparities among similarly situated defendants . . . and, where applicable, the need to provide restitution to any victims of the offense." United States v. Cavera, 550 F.3d 180, 188-89 (2d Cir. 2008), cert. denied, 556 U.S. 1268 (2009)(citations omitted); 18 U.S.C § 3553(a)(6). United States v. Davila-Gonzalez, 595 F.3d 42, 46 (1st Cir. 2010)("[A] sentencing court ordinarily should begin by calculating the applicable guideline sentencing range; then determine whether or not any departures are in order; then mull the factors delineated in 18 U.S.C. § 3553(a) as well as any other relevant considerations; and, finally, determine what sentence, whether within, above, or below the guideline sentencing range, appears appropriate.")

As the Guidelines "are not the only consideration," the district court must "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Gall v. United States, 552 U.S. at 49-50 (footnote and internal citations omitted)(emphasis added).

The Guidelines should not be given more or less weight than any other factor. See United States v. Carty, 520 F.3d 984, 991 (9th Cir.), cert. denied, 553 U.S. 1061 (2008). See also Nelson v. United States, 555 U.S. 350, 352 (2009)*(per curiam)* ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.") (emphasis in original). A court "must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." Cavera, 550 F.3d at 189. As a result, a sentencing court is "generally free to impose sentences outside the recommended range." United States v. Sanchez, 517 F.3d 651, 660 (2d Cir. 2008)(a district court has broad latitude to "impose

either a Guidelines sentence or a non-Guidelines sentence."); United States v. Daidone, 124 Fed. Appx. 677, 678 (2d Cir. 2005)(as the Guidelines are no longer mandatory, a departure is no longer necessary in order for the sentencing court to impose a sentence below the Guidelines range). The Court's overall goal should be to impose a reasonable sentence, see, e.g., United States v. Guzman, 287 Fed. Appx. 956, 957 (2d Cir. 2008), and when considering the sentencing factors outlined in § 3553(a), "the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances." United States v. Jones, 460 F.3d 191, 195 (2d Cir. 2006).

To be sure, the Guidelines range as determined by the Court, although not mandatory is an important factor for the Court to consider. However, "[i]t is important, too, to realize that departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some respect, the rigidity of the Guidelines themselves. District judges, therefore, need not shrink from utilizing departures when the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence." United States v. Gaskill, 991 F.2d 82, 86 (3rd Cir. 1993). "The Guidelines are not a straightjacket for district judges." United States v. Cook, 938 F.2d 149, 152 (9th Cir. 1991). The Sentencing Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." United States v. Milikowsky, 65 F.3d 4, 9 (2d Cir. 1995). Finally, the United States Supreme Court has noted "[i]t has been uniform and constant the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996).

As such, the Court may impose a sentence outside the guidelines range if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C § 3553(b)(1).

**a. Acceptance of Responsibility for the Crimes**

Mrs. Shifrin has fully accepted responsibility for her crimes, and she shows sincere remorse. She fully admitted that what she did was wrong, and she is fully accountable for her charged conduct. In addition, she fully disclosed to the Government all information available to her.

It is well-settled that in determining the appropriate sentence within the Guidelines or in varying from the guidelines, a sentencing court has the discretion to consider the Defendant's cooperation with the Government as an 18 U.S.C. § 3553(a) factor or through a downward departure. See, e.g., United States v. Terry, 771 F. App'x 277, 279 (4th Cir 2019)("the court was free to consider Terry's cooperation in the course of applying the § 3553(a) factors even in the absence of a substantial assistance motion."). See also United States v. Robinson, 741 F.3d 588, 599 (5th Cir. 2014) (collecting cases "holding that a sentencing court has the power to consider a defendant's cooperation under § 3553(a), irrespective of whether the Government files a [substantial assistance] motion"); United States v. Fernandez, 443 F.3d 19, 33 (2d Cir. 2006)("in formulating a reasonable sentence a sentencing judge must consider the contention that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1 ("non-5K cooperation") as Section 3553(a)(1), in particular, is worded broadly, and it contains no express limitations as to what "history and characteristics of the defendant" are relevant. This sweeping

provision presumably includes the history of a defendant's cooperation and characteristics evidenced by cooperation, such as remorse or rehabilitation.")

Last but not least, Mrs. Shifrin's cooperation could also be considered relevant to the "characteristics of the defendant" under 18 U.S.C. §3553(a)(1), and the "need to protect the public from further crimes of the defendant" under 18 U.S.C. §3553(a)(2)(C), because by cooperating she has severed her ties with criminal associates. See United States v. Morgan, 255 F.Supp.3d 869, at *873 (E.D. Wis. 2017)("Willingness to provide information also suggested that the defendant was willing to sever ties with criminal associates, which in turn suggested better behavior in the future.")

Therefore, the Court should consider Mrs. Shifrin's cooperation as a mitigating factor that warrants a reduction of his guideline range.

**b. Need for Deterrence**.

The need for deterrence and the need to protect the public from future crimes, 18 U.S.C. § 3553(a)(2)(B)(c), applies strongly in this particular case.

General or indirect deterrence focuses on the general prevention of crime by making examples of specific deviants. The individual actor is not the focus of the attempt at behavioral change, but rather receives punishment in public view in order to deter other individuals from deviance in the future. As one court explained, "when discussing general deterrence, the Sentencing Guidelines expressly refer to the need for 'a clear message [to] be sent to society.' U.S.S.G. ch. 4, pt. A, introductory cmt. United States v. Crespo-Ríos, No. 13-2216, 2015 U.S. App. LEXIS 8555, *14 (1st Cir. 2015). While incarceration increases the deterrent effect of a sentence on others, "interest in general deterrence could [not] only be served by incarceration." United States v. Prosperi, 686 F.3d 32, 48 (1st Cir. 2012). Specifically, the

Sentencing Commission noted that the Sentencing Guidelines were written, in part, to "ensure a short but definite period of confinement for a larger proportion of these 'white collar' cases, both to ensure proportionate punishment and to achieve deterrence." See United States Sentencing Commission, Fifteen Years of Guidelines Sentencing, 56 (November 2004).

Specific deterrence focuses on the individual in question. The aim of these punishments is to discourage the criminal from future criminal acts by instilling an understanding of the consequences.

Here, Mrs. Shifrin is a first-time offender, and it is extremely unlikely that she will ever commit any crime. She is 62 years' old. As a first-time nonviolent offender with a long history of education and employability, no criminal history, and full acceptance of responsibility, there is nothing to suggest that Mrs. Shifrin poses any threat or risk of committing another criminal offense. See, e.g., United States v. Seljan, 547 F.3d 993, 1007 (9th Cir. 2008)(acknowledging that defendant's age and health reduced the likelihood of recidivism); United States v. Roth, No. 05 CR 792-5, 2008 U.S. Dist. LEXIS 19603, at *7 (N.D. Ill. Mar. 11, 2008 (departing downward to sentence of probation where defendant posed no risk of recidivism based on lack of criminal history); United States v. Paul, 239 Fed. App' x. 353, 354 (9th Cir. 2007) (vacating defendant's 16 months' imprisonment for theft from a local government receiving federal funds, in part because the defendant was a first-time offender with absolutely no criminal record whatsoever.); United States v. Ressam, 679 F.2d 1069, 1098 (9th Cir. 2012) (Reinhardt, J., concurring) ("Similarly, a significant factor in determining the appropriate length of a sentence for those committing criminal offenses is ordinarily their past criminal history. What is a reasonable sentence for a first-time offender will often be unreasonable for a defendant with a lengthy criminal record, and vise-versa); United States v. Baker, 445 F.3d 987, 990-92

(7th Cir. 2006) (upholding downward variance based on the fact that "a prison term would mean more to [a defendant who has never been incarcerated before] than to a defendant who previously has been imprisoned.")

The character letters submitted on behalf of Mrs. Shifrin conclusively demonstrate the aberrant nature of her conduct that landed her before this Court; they discuss not only her genuine remorse but also the unlikelihood of committing future crimes.

Last but not least, since the beginning of this case, Mrs. Shifrin has suffered emotionally from case-related anxiety, headaches, hopelessness, memory gaps, and insomnia, beating herself up for the wrong choices she made. Exhibit 3. As a result, Dr. Elen Tylkin, prescribed medications to treat her depression and anxiety. Id. All this stress and anxiety have already taken a heavy toll on her psychological well-being as she has been paying a high price for her mistakes that resulted in this prosecution.

Overall, given the circumstances of this matter, the goals of general and specific deterrence have already been accomplished in this matter without unnecessary additional incarceration.

**c. Personal Characteristics of Defendant as Mitigating Factor**

Mrs. Shifrin has very strong family and community ties. Mrs. Shifrin is a caring and generous person who cares deeply not only for her close friends and family. Throughout her life, she was never motivated by evil or by malice. In her letters of support from people who have known Mrs. Shifrin for decades, she is characterized as "loving, trustworthy, and honest," "animal lover," "hardworking, respected, trustworthy, responsible, and very reliable person who is always willing to help," "truly a great individual, wife, mother, sister, and friend," "a remarkable woman," "a very special and family-oriented person," "a hard-working, dutiful and

compassionate woman, dedicated to uplifting and embracing her family, her friends and even strangers," "kind, compassionate, authentic, and hardworking," "embodies the true essence of compassion and empathy, and her presence in our lives has been a blessing," "a shining example of resilience, kindness, and love," "an exemplary worker," "a pillar of our family and community," "a sweet, caring, and somewhat naive individual," "a person of extraordinary character and unwavering kindness." Exhibit 2.

As one person states, "[w]hether it's her family, friends, or even acquaintances, she always goes above and beyond to ensure their well-being. Id. at 4. When Eugene Gokhman's mother was terminally ill with cancer, "Elena used her vacation time to visit and help take care of her by the bedside." Id. at 5. When in 2008, Mr. Pavel Knizhnik lost his employment as a mortgage underwriter and his apartment, Mrs. Shifrin and her husband Roman "generously provided [him] with a room in their home free of charge." Id. at 17. She helps her community members with very minimal English, such as Vladimirs Tolstovs, to obtain a subsidized house and affordable medical insurance. Id. at 21. She also takes cares of Mr. Tolstovs' elder wife, visiting her at the nursing home and hospital to provide support. Id. Mr. Tolstovs states, "[e]ven though she doesn't recognize many people anymore, Natalia lights up at the sight of their familiar faces, and I can see slight improvement in her when they're around. I honestly don't know how I would've coped without Elena and her family through all these heartbreaking moments." Id.

One just needs to read one letter from Mrs. Shifrin's daughter Mishel Shifrin to truly understand what kind of remarkable person she is. Id. at 25-26. Mrs. Shifrin is the "biggest support system" for her daughter. Mishel writes, "[s]he is the reason I am the woman I am today. I cannot even imagine going a day without calling her just to see how she's doing or hugging her

goodnight. She is my biggest role model and to this day, I can say that I hope to have at least half the love she pours out to the world and strength that she has. She is a woman I aspire to be." Id. at 26. Further, Mishel writes about her mom:

> She has been there for me during the most difficult times in my life and the best times of my life. She has always stood next to me as I navigated from elementary school all the way up to pharmacy school. She showed me the meaning of courage. She taught me the value of hard work and to never give up when life becomes difficult. Without her, I would not be holding a doctorate diploma in my hand. She is the reason I am the woman I am today. I cannot even imagine going a day without calling her just to see how she's doing or hugging her goodnight. She is my biggest role model and to this day, I can say that I hope to have at least half the love she pours out to the world and strength that she has. She is a woman I aspire to be.
>
> Id.

Notably, "Elena's compassion extends beyond human relationships; it also encompasses her profound love for animals." Id. at 23. When Yael Polevoy's beloved dog fell seriously ill with kidney failure, Elena was there for me every step of the way. Mrs. Shifrin accompanied Yael to veterinary appointments, helped her care for her dog at home, and "provided a shoulder to cry on when the prognosis was grim. The at-home care included complex IV treatments, which Elena helped set up and instructed us on. When my dog ultimately passed away, Elena's support did not waver. She helped me cope with the immense grief and loss, showing an incredible depth of empathy and understanding." Id.

You Honor, based on these letters, please take into account that you are sentencing a reliable and supporting mother, a talented and hard-working individual whose criminal activities were just an unfortunate aberration from her otherwise law-abiding life.

Finally, the following mitigating sentencing factors are relevant to the Court's consideration.

**Health Considerations**

The Guidelines in U.S.S.G. § 5H1.4. provide that "[p]hysical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." See also United States v. Tosti, 733 F3d 816, 824 (9th Cir. 2013)(" Age . . . may be relevant in determining whether a departure is warranted . . . An extraordinary physical impairment may be a reason to depart downward; e.g., in case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.")(citing U.S.S.G. § 5H1.4); United States v. Koon, 518 U.S. 81, 95-96, 135 L. Ed. 2d 392, 116 S. Ct. 2035 (1996)( a departure is permitted for physical impairment where such a factor is present "to an exceptional degree.") Indeed, § 5H1.4 expressly recognizes that "[p]hysical condition or appearance, including physique, may be relevant in determining whether a departure is warranted." Thus, courts have authority to depart on this ground. See, e.g., United States v. Jimenez, 212 F. Supp 2d 214, 216 (S.D.N.Y. 2002)(departing because defendant suffered a brain aneurism that left her mentally and physically weaker as her physical condition was exceptional and she was seriously infirm); United States v. Maltese, 1993 WL 222350, (N. D. Ill. 1993) (granting a 62-year old defendant a downward departure since he was sufficiently "elderly and infirm," and that an alternative form of confinement would be "equally efficient as and less costly than incarceration," as required under § 5H1.1 of the Guidelines); United States v. Baron, 914 F Supp 660, 663 (D. Mass. 1995)(granting a downward departure from a level 18

to a level 10, sentencing Defendant to one year probation, 6 months of which is to be served in home detention, due to his age and medical condition involving, inter alia, thyroid deficiency, noting that "[t]he best policy considerations can be unnecessarily cruel when applied rigidly and without exception to individual human beings…Some [offenders] would be destroyed by a term in prison. There are defendants for whom prison incarceration makes no sense."); United States v. Willis, 322 F. Supp. 2d 76, 85 (D. Mass. 2004)(departing from a level 17 to a level 10, in order to give defendant a sentence of probation due to his age and medical conditions).

Here, Mrs. Shifrin,who is 62 years old, suffers from hypothyroidism, hypertension, and acid reflux. She is 62 year's old. In 1996, Mrs Shifrin had her gallbladder surgically removed, and in approximately 2003, Mrs. Shifrin had her thyroid surgically removed. Mrs. Shifrin is taking medication to manage her medical conditions. Recent medical records indicate that she has been suffering from several health problems, including postoperative hypothyroidism, hyperlipidemia, nodal rhythm disorder, bradyarrhythmia, gastro-esophageal reflux disease with esophagitis, osteoarthritis of the wrists, degenerative joint disease of hand, increased frequency of urination, impaired fasting glycemia." Exhibit 1 at 10-11, Exhibit 5. She also is diagnosed by Elen Tylkin, M.D. with a Major Depressive Disorders, anxiety, and insomnia. Exhibit 3. Further, she suffers from shoulder thoracic neck pain as she "has difficulty extending, turning, sitting, lifting, and sleeping." Exhibit 4.

As a result, her incarceration would be very challenging to her health and very costly for society. See, e.g., United States v. Baron, 914 F. Supp 660, 664 (D. Mass. 1995)("As a general matter, as well as being costly, imprisonment is not efficacious particularly where the offender is not as likely to commit future crimes as a younger offender. Indeed, the Commission admits as much, recommending home confinement as an alternative form of punishment when

incarcerating an elderly and infirm defendant is "less efficient and more expensive than imprisonment.”).

It should be noted that her husband Mr. Roman Shifrin has been suffering from a heart condition called “chronic AFib.” AFib is an irregular and often rapid heart rhythm, or arrhythmia, that can lead to serious medical complications, including the appearance of blood clots, which can lead to stroke, heart attack, or heart failure. Exhibit 6. Mrs. Shifrin takes care of him every day, accommodating him “to all doctors visits and procedures . . . makes sure [he does not] miss a single dose of [his] medication.” Exhibit 2 at 19. Without her support and assistance, his heart problems will further deteriorate. It should be noted that her daughter has been diagnosed with epilepsy; this daunting diagnosis also requires Mrs. Shifrin’s care and support. Exhibit 7.

Therefore, the Court should consider her age, medical conditions and her necessity to take care of her ill husband as a mitigating factor, warranting a reduction in her sentence.

**Adjustment for Certain Zero-Point Offenders**

New Amendment 821 relating to criminal history in Part B of the proposed amendment sets forth a new Chapter Four guideline at §4C1.1 (Adjustment for Certain Zero-Point Offenders). The new U.S.S.G. §4C1.1 provides a decrease of 2 levels from the offense level determined under Chapters Two and Three if the defendant meets all of the following criteria: (1) the defendant did not receive any criminal history points from Chapter Four, Part A; (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex

offense; (6) the defendant did not personally cause substantial financial hardship; (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights); (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848)

Mrs. Shifrin is a first-time offender and meets all the applicable criteria under U.S.S.G. §4C1.1. With respect to a potential argument that a violation of 22 U.S.C § 2778 is within the scope of U.S.S.G. § 4C1.1(a)(7), under which only a defendant who "did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense" is eligible for this reduction, Mrs. Shifrin's offense did not involve selling of a "firearm or other dangerous weapon."

Under U.S.S.G. § 1B1.1, Application Note 1(H), a "firearm" is defined to include "(i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (ii) the frame or receiver of any such weapon; (iii) any firearm muffler or silencer; or (iv) any destructive device." United States v. Kuznetsov, No. 21-CR-99 (WFK)2024, U.S. Dist. LEXIS 80575, at *13 (E.D.N.Y. Apr. 30, 2024). Here, Mrs. Shifrin conspired to export certain thermal riflescopes and night vision goggles, which are not defined as firearms.

Therefore, Mrs. Shifrin is eligible for the U.S.S.G. §4C1.1's reduction of 2 levels, and the Court should apply this reduction to her.

Overall, as the Supreme Court reiterated, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Pepper v. United States, 131 S. Ct. 1229, 1239-40 (2011)(quoting Koon v. United States, 518 U.S. 81, 113, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996). Thus, the nature of the offense, Mrs. Shifrin's personal characteristics, and family circumstances strongly favor the imposition of a non-guidelines sentence.

Mrs. Shifrin admitted her mistakes and learned her lessons, and a non-guideline sentence of time-served would help her rebuild her life.

## CONCLUSION

For all these reasons, Mrs. Shifrin respectfully requests that the Court impose a non-guideline sentence of time-served. This sentence would be sufficient but not greater than necessary to achieve the goals and dictates of 18 U.S.C. § 3553. July 3, 2024

/s/ Alex Gruzman

______________________

Alex Gruzman
Law Office of Alex Gruzman
7703 Santa Monica Blvd Ste 1
West Hollywood, CA 90046
818-590-6688
Email: info@alexgruzman.com

/s/ Arkady Bukh

__________________________

Bukh Law, PA
1123 Avenue Z
Brooklyn, NY 11235

(718) 376-4766
honorable@usa.com

Attorneys for Defendant
Elena Shifrin